**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| IN RE: ) | CASE No. 18-21473 (JJT) |
| ) | |
| HUBERT WIGGS ) | CHAPTER 7 |
|     Debtor. ) | |
| ) | RE: ECF Nos. 43, 52, 55, 56, 57, and 58 |

**RULING ON THE TRUSTEE'S**
**OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS**

I.    INTRODUCTION

Before the Court is the Chapter 7 Trustee's ("Trustee") Objection to Debtor's Claim of Exemptions ("Objection," ECF No. 43). The Debtor, Hubert Wiggs ("Debtor"), claims an exemption in his favor in the entirety of the cash surrender value of a Prudential Appreciable Life Insurance Policy ("the Policy") pursuant to Connecticut General Statutes §§ 38a-453 and 38a-454. The Trustee raises two objections: (1) the claimed exemption is improper because Conn. Gen. Stat. §§ 38a-453 and 38a-454 operate to protect the Policy's beneficiary and not the insured; and, (2) the amended exemption is prejudicial to the administration of the bankruptcy estate. For the reasons stated below, the Objection is SUSTAINED, in part, and OVERRULED, in part.

II.    FACTS

On September 6, 2018, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor's original Schedule A/B disclosed his interest in the Policy, which had a cash surrender value of $22,459.70. (ECF No. 14). On Schedule C, the Debtor

claimed the Policy's surrender value completely exempt in his favor pursuant to Conn. Gen. Stat. §§ 38a-453 and 38a-454. *Id*. The Trustee did not then object to the claimed exemptions.

The following background facts are relevant to this discussion. The Debtor acquired the Policy in 1985, and upon turning 65 years old, observed that the Policy's monthly premium payments had steadily increased to the current amount of $867.75. Due to the Debtor's inability to make these direct premium payments on the Policy, the monthly premiums were paid out of the Policy's cash surrender value, decreasing that value each month. After being informed by his insurance agent that the cash surrender value of the Policy would be exhausted within approximately 18 months due to the draws for the monthly premiums, the Debtor instructed his insurance agent to liquidate the remaining cash surrender value of the Policy. Thereafter, on January 30, 2019, the Debtor received a check in the amount of $19,784.37 reflecting the cash surrender value of the Policy. The Debtor ostensibly marshalled these monies for himself and used a portion of it for his own benefit.[1] Nothing in the record supports, nor has the Debtor provided evidence that a claim or inference can be made that the monies were garnered by the Debtor for the benefit of the beneficiaries.

On February 28, 2019, the Debtor filed amended Schedules to reflect the reduction in the Policy's cash surrender value from $22,459.70 to $19,784.37, and to amend his claim of exemptions in the Policy to $4,000.00 pursuant to Conn. Gen. Stat. §§ 38a-453 and 38a-454, and

---

[1] At the time the Debtor liquidated the cash surrender value of the Policy, he was also seeking a modification of his mortgage. Soon after receiving the policy proceeds, the Debtor made a payment of $8,423.56 from those proceeds to an individual he believed to be from his mortgage company for what he thought was part of the modification process. After speaking with his mortgage company, the Debtor realized he was a victim of fraud, and the individual who received the money was not affiliated with his mortgage company after all. Nonetheless, the Debtor spent a portion of the liquidated cash surrender value for his benefit.

$995.00 pursuant to Connecticut General Statutes § 52-352b(r) respectively.[2] (ECF No. 39). The Trustee again did not object to the amended Schedules and claimed exemptions.

Based on those claimed exemptions, the Trustee made demand for the remaining nonexempt cash value of the Policy in the amount of $14,789.37. On May 29, 2019, the Debtor paid the Trustee $9,000.00 of the nonexempt cash value, and later made two additional monthly payments, which totaled $400.00.

On July 22, 2019, the Debtor filed an additional set of amended Schedules whereby he again claimed a full exemption in the Policy's adjusted surrender value of $19,784.37 under Conn. Gen. Stat. §§ 38a-453 and 38a-454. (ECF No. 42).[3] The Trustee filed a timely Objection on August 19, 2019, arguing that the Debtor's claim of exemption was prejudicial to the administration of the bankruptcy estate and improper. (ECF No. 43). A hearing on the matter was held on October 9, 2019, at which time the Court took the matter under advisement and directed the parties to file and exchange supplementary legal memoranda.

III.    DISCUSSION

    A.  Prejudicial Effect of the Debtor's Claimed Exemption

Rule 1009(a) of the Federal Rules of Bankruptcy Procedure permits liberal amendment of exemption schedules and provides that an exemption schedule "may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). There are, however, exceptions to this principle. Upon objection by the Trustee or any party in interest, the Court may deny an amended exemption schedule upon a showing of bad faith by the debtor or prejudice to creditors. *In re Howe*, 439 B.R. 257, 259-60 (Bankr. N.D.N.Y. 2009). A mere

---

[2] Connecticut General Statutes §52-352b(r) permits an exemption in any property of the exemptioner up to $1,000.00.
[3] In asserting the most recent exemption, the Debtor's prior exemption claimed under Conn. Gen. Stat. § 52-352b(r) was either withdrawn or superseded as it no longer appears on the Debtor's Schedules. (ECF No. 42).

3

allegation of bad faith or prejudice is insufficient, and a claim of bad faith or prejudice must be shown by clear and convincing evidence. *In re Talmo*, 185 B.R. 637, 644 (Bankr. S.D. Fla. 1995); *In re Kobaly*, 142 B.R. 743, 748 (Bankr. W.D. Pa. 1992).

The Trustee argues that the estate will be prejudiced if the Court approves the Debtor's amended exemptions because she has taken steps to collect and distribute the asset and has $9,400.00 on deposit in the bankruptcy estate. The Trustee has not, however, shown by clear and convincing evidence that allowing Debtor's amended exemptions would be prejudicial to the Trustee, creditors, or to the administration of the estate, other than by simply making the allegations of harm. Here, the Trustee has failed to explain the nature of any such prejudice distinctive from a mere timely assertion of these exemptions.

In *Talmo* the court described the level of prejudice that must be shown to deny a debtor's amended claim of exemption:

> In determining whether to deny an amendment to schedules on the basis of prejudice, the focus is on the effect of allowing the amendment upon creditors and other parties in interest. Mere delay in filing an amendment, or the fact that an amendment if allowed will result in the exemption being granted, are not sufficient to show prejudice. . . . [P]rejudice may be established by showing harm to the litigating posture of parties in interest. If the parties would have taken different actions or asserted different positions had the exemption been claimed earlier, and the interests of those parties are detrimentally affected by the timing of the amendment, then the prejudice is sufficient to deny amendment. Moreover, an amendment is prejudicial if it impairs a trustee in the diligent administration of the estate.

*Id.*, at 645 (citation omitted). In determining whether this level of prejudicial conduct is present, the court should "balance the prejudice to the debtor of disallowing the exemption against the prejudice to third parties in allowing the exemption." *In re OBrien*, 443 B.R. 117, 143 (Bankr. W.D. Mich. 2011) (quoting *Arnold v. Gill (In re Arnold),* 252 B.R. 778, 785 (9th Cir. BAP 2000)).

The Trustee's objection fails to allege or provide any such evidence of harm to the administration of the estate or any other legitimate reliance interests of the parties in interest. This Court endorses the generally followed rule that a simple delay in filing an amended exemption does not prejudice a party in interest. *In re Fournier*, 169 B.R. 282, 284 (Bankr. D. Conn. 1994) (citing *In re Doan*, 672 F.2d 831 (11th Cir. 1982)). Further, this Court does not find that the Trustee has been prejudiced simply because she has collected a portion of an asset upon which an exemption is now claimed. *See In re Drake*, 39 B.R. 75, 77 (Bankr. E.D.N.Y. 1984); *see also In re Sheridan*, 38 B.R. 52 (Bankr. D. Vt. 1983).

The lack of prejudice, however, is not fatal to the Trustee's objection. This Court has found the Debtor's current claim of exemptions improper based on the factual circumstances of this case and in light of the legislation's enactment of Connecticut General Statutes § 52-352b(s).

B.   The Scope of Connecticut General Statutes §§ 38a-453 and 38a-454

It is well-established that "[t]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975). The plain meaning of the language provides the most reliable source of interpreting the meaning of the statute. *Watt v. Alaska*, 451 U.S. 259, 266 n. 9 (1981). There are two statutes at issue in this case, each of which this Court finds inapplicable to the Debtor's claimed exemption based on a plain reading of the relevant text.

In the present case, the Debtor elected to exempt the cash surrender value of the Policy under Conn. Gen. Stat. §§ 38a-453 and 38a-454. We start with a discussion of the latter, as its inapplicability is easily discernable. Section 38a-454 refers to the ability of insurance policies and annuities to be held in trust and protected from the claims of creditors of beneficiaries other

than the policyholder.[4] Neither the record nor the evidence presented by the Debtor indicate that the proceeds of the Policy are being held in trust for the benefit of another. As such, the Debtor's Policy does not fall within the statutory exemption under Conn. Gen. Stat. § 38a-454.

Next, the Debtor claims an exemption under Conn. Gen. Stat. § 38a-453, which states in relevant part, "[t]he beneficiary of any life insurance policy, being a person other than the insured . . . shall be entitled to the proceeds of the policy as against the representatives or creditors of the insured[.]"

On its face, Conn. Gen. Stat. § 38a-453 protects the beneficiary of a life insurance policy against a representative of the insured or creditors, while explicitly excluding the insured from protection. Here, it is the Debtor-insured asserting the exemption, and it is the Debtor-insured receiving and using the proceeds of the Policy for his own benefit. This Court declines to read into the statute the insured's right to claim an exemption in favor of beneficiaries only to recover and use the policy proceeds on his own behalf. *See Blue Chip Stamps*, 421 U.S. at 756 ("Before a court properly could consider taking such liberty with statutory language there should be, at least, unmistakable support in the history and structure of the legislation. None exists in this case.").

A review of the statutory background of Conn. Gen. Stat. § 38a-453 starts with an analysis of the two cases the Debtor cites to in support of his position that the claimed exemption is proper. The Court finds both cases materially distinguishable, as a factual matter, from the present case.

---

[4] Conn. Gen. Stat. § 38a-454 provides in relevant part, "[a]ny domestic life insurance company shall have power to hold the proceeds of any policy issued by it under a trust or other agreement upon such terms and restrictions as to revocation by the policy holder and control by beneficiaries and with such exemptions from the claims of creditors of beneficiaries other than the policy holder as have been agreed to in writing by such company and the policyholder."

6

In *Pearl v. Goldberg*, 300 F.2d 610 (2d Cir. 1962), the Second Circuit affirmed the District Court's ruling and held that the cash surrender value of the debtor's life insurance policy was exempt property under Connecticut General Statutes § 38-161[5] (now codified at § 38a-453), and thus beyond the reach of the trustee. There, the bankruptcy referee required the debtor to transfer his interest in his life insurance policy, including its cash surrender value, to the trustee. *Id*. at 611.  The District Court reversed the referee's order and held the cash surrender value exempt by virtue of § 6 of the Bankruptcy Act, 11 U.S.C. § 24, because under Conn. Gen. Stat. §38-161 Connecticut specifically exempted that property. *Id*.

In affirming the District Court's ruling, the Second Circuit thoroughly analyzed the legislative history and interpretation of Conn. Gen. Stat. § 38-161 and reasoned that the purpose of the statute "was to extend to all beneficiaries the protection which [the prior statute] had granted to wives [of the insured]." *Id*. This reasoning highlights not only the Debtor's misplaced reliance on this case, but also lends support to the reading that Conn. Gen. Stat. § 38-161 was enacted to protect a *beneficiary* under a life insurance policy, and not an insured. Moreover, *Goldberg* did not involve, nor did it address, the insured's right to collect and use the policy proceeds under Conn. Gen. Stat. § 38-161, and insofar as the Debtor here relies on *Goldberg* in support of this contention, the Court finds that reliance misplaced.

Additionally, the Debtor cites to *Klebanoff v. Mutual Life Ins. Co. of N.Y.*, 246 F. Supp. 935 (D. Conn. 1965), in support of his position that the claimed exemption is proper under Conn. Gen. Stat. § 38a-453. *Klebanoff* involves a Motion for Partial Summary Judgment brought by the named beneficiary of various life insurance policies to recover their face value following the death of the insured husband. *Id.* Two additional parties also claimed they were entitled to the

---

[5] The language of Conn. Gen. Stat. § 38-161 and Conn. Gen. Stat. § 38a-453 is identical.

insurance proceeds—the trustee of the estate for both the named beneficiary and insured, and a creditor with a judicial lien against the named beneficiary and insured. *Id*. at 940. Relevant to this Court's analysis, the court considered which of the adverse claimants was entitled to the insurance proceeds. *Id*.

There, the court determined that the trustee of the insured was not entitled to the proceeds of the life insurance policy *as against the beneficiary*. *Id*. at 942. In reaching this conclusion, the court, *Timber, J.*, discussed the exempt character of the cash surrender value of the policies at issue based on the Second Circuit's decision in *Goldberg*, but also addressed the trustee's argument that Conn. Gen. Stat. § 38-161 does not protect an insured from claims by his own creditors. *Id*. The court disagreed with the trustee's contention due to the effect this reading would have on the beneficiaries of the policy, noting that "[t]o give the exemption the narrow construction urged by the trustee is to give beneficiaries of insured debtors no protection at all." *Id*.

This Court finds the factual circumstances in *Klebanoff* to also differ materially from those in the present case because this Court is not faced with a claim from or for the beneficiaries under the Debtor's Policy. Here, the Debtor-insured simply claims that he is entitled to the proceeds under the Policy despite the plain language of Conn. Gen. Stat. § 38a-453 stating otherwise. To allow the Debtor to liquidate the entirety of the proceeds of the Policy for his own benefit under Conn. Gen. Stat. § 38a-453 would run afoul of long-standing jurisprudence.[6]

A further look into the legislative history of Connecticut's exemption statutes since the decisions of *Goldberg* and *Klebanoff* underscores the Court's ruling today. As the Second Circuit

---

[6] The Court notes that by terminating a policy or revoking a beneficiary designation, the insured can always extinguish the rights of the named beneficiaries. By both his direction to terminate the policy and deploying proceeds in his favor, the Debtor has effectively chosen to revoke beneficiary designations.

8

noted in *Goldberg*, it is presumed that the Connecticut legislature was aware of the prior interpretations of state law, especially those that interpret and apply statutes enacted by the legislature. *Goldberg, supra*, 300 F.2d at 613. It follows then, that when it amended Conn. Gen. Stat. § 52-352b in 1993 to include three new subdivisions of "exempt property," the legislature was aware of the decisions in *Goldberg* and *Klebanoff*. Section 52-352b(s) was one such addition which provides an exemption for "[a]ny interest of the exemptioner not to exceed in value four thousand dollars in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the exemptioner under which the insured is the exemptioner or an individual of whom the exemptioner is a dependent." In light of the plain language of Conn. Gen. Stat. § 52-352b(s), it is clear that the purpose of this exemption is to protect the insured's interest up to $4,000.00 in the loan value of a life insurance policy.

In her Memorandum in Support of Objection (ECF No. 57), the Trustee argues that if the Court accepts the Debtor's construction of Conn. Gen. Stat. § 38a-453, it would render the exemption provided for under Conn. Gen. Stat. § 52-352b(s) irrelevant. This is a tenable argument in this instance. The Court agrees because of the distinguishing facts it has discussed herein.

The decisions upon which the Debtor relies predate the Bankruptcy Reform Act of 1978 and Conn. Gen. Stat. § 52-352b(s) and were decided at a time when a debtor could protect certain property solely through state exemptions. Since the enactment of the Bankruptcy Reform Act of 1978 and Conn. Gen. Stat. § 52-352b(s), a debtor, and specifically an insured who is the owner of a life insurance policy, now has the option to exempt and protect a portion of the cash surrender value of that policy.[7]

---

[7] A debtor in Connecticut has the option to protect certain property under either state statutory exemptions (Connecticut General Statutes § 52-352 et seq.) or the federal exemption under 11 U.S.C. § 522(d). The federal

Under Conn. Gen. Stat. § 52-352b(s), the Connecticut legislature has provided an exemption that would allow the Debtor to liquidate and receive a portion of the cash surrender value of the Policy, however, that action is not proper through the exemption claimed at this juncture. Based on a plain reading of Conn. Gen. Stat. §§ 38a-453 and 38a-454 and an analysis of the relevant case law pertaining to the statute, this Court finds that under the distinctive facts in this case, the Debtor's claimed exemption is improper.

IV.   CONCLUSION

The Court finds that, while there is no evidence of prejudice to either the Trustee or to the administration of the bankruptcy estate in the amendment of the Debtor's exemptions in the cash surrender value of his life insurance policy, the Debtor's claimed exemption is improper, as previously discussed herein; it runs afoul with how courts have interpreted Conn. Gen. Stat. §§ 38a-453 and 38a-454 to protect the beneficiary's interest under a life insurance policy. Accordingly, the Court SUSTAINS the Trustee's Objection to Debtor's Claim of Exemptions relating to the propriety of the exemption, but OVERRULES the claim of prejudice of the amendments to these emptions.

IT IS SO ORDERED at Hartford, Connecticut this 13th day of November 2019.



James J. Tancredi
United States Bankruptcy Judge
District of Connecticut

---

equivalent to Conn. Gen. Stat. § 52-352b(s) is found at 11 U.S.C. § 522(d)(8), and provides an exemption for "[t]he debtor's aggregate interest, not to exceed in value $12,625 . . . in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent."